IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TYRONE LEWIS-BEY,

    Plaintiff,

v.

DELAWARE COUNTY, et al.,

    Defendants.

CIVIL ACTION
NO. 17-2537

## OPINION

**Slomsky, J.**                                                                               March 27, 2018

## I. INTRODUCTION

Plaintiff Tyrone Lewis-Bey, proceeding pro se, brings this action against Defendants Delaware County, Darby Borough, Darby Borough Police Department and Officer Uffleman pursuant to 42 U.S.C. § 1983, alleging that his civil rights were violated. (Doc. Nos. 4, 9.) Plaintiff's claims are based on his assertion that he was wrongfully stopped and arrested without probable cause in violation of the Fourth Amendment. (Doc. No. 4.) Plaintiff also claims his rights were violated when the arresting officer, Defendant Officer Uffleman, issued the summons, because he refused to use Plaintiff's Moorish surname and mischaracterized Plaintiff's race. (Id.) He also asserts a claim for civil conspiracy, and seeks punitive damages against Defendants. (Doc. Nos. 4, 9.)

Defendants have filed two Motions to Dismiss for failure to state a claim. (Doc. Nos. 14-15.) The Motions are ripe for disposition.[1]

---

[1] In reaching a decision, the Court has considered the Amended Complaint (Doc. Nos. 4, 9), the Motions to Dismiss the Amended Complaint (Doc. Nos. 14-15), and Plaintiff's Responses in Opposition (Doc. Nos. 21, 22, 25-29).

## II. BACKGROUND

On December 22, 2016, Plaintiff left his home on his bicycle around 1:30 a.m. to purchase snacks at a local convenience store. (Doc. No. 4 at 8.) Finding that it was closed, Plaintiff returned home, set down his bicycle, and sat on his front steps to return a text message. (Id. at 9.) At that point, a Darby Borough Police Officer approached Plaintiff, asked for identification, and proceeded to pat him down. (Id. at 9-10.) The officer, later identified as Officer Uffleman, told Plaintiff that he had seen him bicycling suspiciously in an area with a high number of car break-ins. (Id.) Officer Uffleman informed Plaintiff that Plaintiff was in violation of a Darby Borough ordinance that prohibits riding a bicycle after dark without a light. (Id.) He asked Plaintiff for identification, and Plaintiff provided Officer Uffleman with his name. (Id.) Officer Uffleman then checked his computer and found an open arrest warrant for Plaintiff. (Id. at 10.) Officer Uffleman arrested Plaintiff and transported him to the Darby Borough Police station. (Id. at 10-11.)

At the Darby Borough Police Station, Plaintiff informed Officer Uffleman that he was a Moorish-American National and that the Darby Borough Police Department lacked authority to impede Plaintiff's right to travel. (Id. at 11.) Nevertheless, Officer Uffleman issued him a citation for operating a bicycle at night without a light. (Id.) In his log sheet, Officer Uffleman recorded that Plaintiff was "Black" and refused to record Plaintiff's Moorish surname, "Bey." (Id.)

On June 26, 2017, Plaintiff filed his initial Complaint with the Court. (Id.) On August 8, 2017, Defendant Delaware County filed a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. No. 7.) On August 21, 2017, Defendants Darby Borough, Darby Borough Police Department and Officer Uffleman filed a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure

2

12(b)(6) and 12(e). (Doc. No. 12.) On August 9, 2017, Plaintiff filed an Amended Complaint.[2] (Doc. No. 9.) On September 14, 2017, upon consideration of Plaintiff's Amended Complaint, this Court denied as moot Defendant Delaware County's and Defendants Darby Borough, Darby Police Department and Officer Uffleman's Motions to Dismiss. (Doc. No. 30.)

On August 28, 2017, Defendant Delaware County filed a Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 14.) That same day, Defendants Darby Borough, Darby Borough Police Department and Officer Uffleman filed a Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e). (Doc. No. 15.) In addition to his Amended Complaint (Doc. No. 9), Plaintiff filed a Second Amended Complaint (Doc. No. 13) and a Third Amended Complaint (Doc. No. 16).

By Order dated September 14, 2017, in addition to denying Defendants' first filed Motions to Dismiss (Doc. Nos. 7, 12) without prejudice as moot in view of the filing of the Amended Complaint, this Court ordered Plaintiff's Second Amended Complaint (Doc. No. 13) and Third Amended Complaint (Doc. No. 16) stricken from the record.[3] (Doc. No. 30.) In late

---

[2] The initial Complaint appears in the docket at document number 4. (Doc. No. 4.) Plaintiff later filed a document titled as an Amended Complaint, which appears in the docket at document number 9. (Doc. No. 9.) The Amended Complaint contains information intended to clarify his claims, but provides no additional facts. Defendants then filed the Motions to Dismiss the Amended Complaint. (Docs. No. 14-15.) In order to address all the facts Plaintiff has pled, the Court must review document number 4 in conjunction with document number 9. In addition, document number 36, another amendment to the Complaint, discussed in footnote 3, also will be considered. Because Plaintiff is a pro se litigant, with limited knowledge of the Federal Rules of Civil Procedure, the Court will cite and consider these documents as one pleading, and this Opinion will refer to them as the Amended Complaint for purposes of determining their sufficiency.

[3] In the Order dated September 14, 2017, the Court struck Plaintiff's Second and Third Amended Complaints because Plaintiff did not obtain Defendants' consent or the Court's leave to file them as required by Federal Rule of Civil Procedure 15. (Doc. No. 30.) Plaintiff

August and early September, Plaintiff filed several Responses in Opposition to Defendants' Motions to Dismiss. (Doc. Nos. 21, 22, 25-29).

### III. STANDARD OF REVIEW

The motion to dismiss standard under Rule 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

---

subsequently moved to amend his Complaint. (Doc. No. 32.) Defendants opposed the Motion by a Response in Opposition. (Doc. No. 34.) Before the Court ruled on the motion, Plaintiff, without Defendants' consent or the Court's leave, amended his Complaint yet again. (Doc. No. 36.) However, the document Plaintiff filed contains only three paragraphs and seeks only to clarify claims already asserted. (Doc. No. 36.) Given Plaintiff's unconventional filing habits throughout this litigation, the Court will consider this document a supplement to Plaintiff's Amended Complaint and will not require Defendants to refile their Motions to Dismiss. For this reason, Plaintiff's Motion to Amend his Complaint (Doc. No. 32) will be granted. Defendants' Motions to Dismiss still are ripe for disposition.

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Where, as here, the complaint is filed pro se, the "complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Fatone v. Latini, 780 F.3d 184, 193 (3d Cir. 2015) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). It should be dismissed only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief." Olaniyi v. Alexa Cab Co., 239 F. App'x 698, 699 (3d Cir. 2007) (citing McDowell v. Del. State Police, 88 F.3d 188, 189 (3d Cir. 1996)).

## IV. ANALYSIS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants seek to dismiss the Amended Complaint in its entirety. (Doc. Nos. 14-15.) Each of Defendants' arguments in opposition to Plaintiff's claims will be addressed in turn.

### A. All Claims Against the Darby Borough Police Department Will Be Dismissed

Plaintiff names the Darby Borough Police Department as a Defendant in this action. Defendants argue that because local police departments are not "persons" who can be sued under § 1983, the Court should dismiss Plaintiff's claims against Darby Borough Police Department. (Doc. No. 15 at 6.) As Defendants note, a police department is considered a subunit of the city or municipality and not distinct from the government at large. DeBellis v. Kulp, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001) ("In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity."); see also Irving v. Borough of Darby, 937 F. Supp. 446, 450 (E.D. Pa. 1996) (dismissing § 1983 claims against the Darby Borough Police Department because "the police department is merely an arm of the local municipality"). Because the Darby Borough Police Department cannot be sued in conjunction with municipalities in § 1983 actions, it is not a proper Defendant in this case. Accordingly, claims against the Darby Borough Police Department will be dismissed.

### B. All Claims Against Delaware County and Darby Borough Will Be Dismissed

Plaintiff names Delaware County and Darby Borough as Defendants in this action. Defendants argue that Plaintiff has not alleged any actionable conduct against Delaware County because the Amended Complaint makes no factual allegations about the County, its employees or its officials in what they did or failed to do, and Plaintiff's conclusory allegations that the County

has violated his right to travel are insufficient. (Doc. No. 14 at 6.) Defendants also argue that the Court should dismiss Plaintiff's claims against Darby Borough because Plaintiff fails to state a viable claim for municipal liability as a matter of law, given that his claims against Darby Borough are for vicarious liability, which cannot be made against a municipality. (Doc. No. 15 at 6-7.)

"A municipality may be held liable for the conduct of an individual employee or officer when that conduct implements an official policy or practice." Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006). Municipal entities cannot be held responsible for the acts of employees under a theory of respondeat superior or vicarious liability. Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Rather, a plaintiff who seeks to hold a municipal entity liable must demonstrate that the violation of constitutional rights was caused by the municipal entity's policy or custom. Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).

Not all state action will rise to the level of a policy or custom. Natale, 318 F.3d at 583. A government policy is made "when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Defreitas v. Montgomery Cty. Corr. Facility, 525 F. App'x 170, 177 (3d Cir. 2013). In contrast, a custom is "an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." Id.

There are three situations in which acts of an employee "may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983." Natale, 318 F.3d at 584. The first is when the appropriate entity promulgates a generally applicable statement of policy and the subsequent acts

7

complained of are simply an implementation of that policy. Id. (citing Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 417 (1997)). The second occurs when "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Id. The third situation arises when

> the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government "is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."

Id. (quoting Bd. of Cty. Comm'rs, 520 U.S. at 417-18).

Furthermore, at the motion to dismiss stage, a plaintiff cannot simply state the legal standard for municipal liability under § 1983 without pleading any supporting facts. See Torres v. City of Allentown, No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. Jun. 30, 2008). In Wood v. Williams, the Third Circuit explained that "simply paraphrasing" § 1983 will not satisfy the pleading requirements for a Monell claim. 568 F. App'x 100, 103-04 (3d Cir. 2014). The Wood court noted that "the complaint did not allege facts showing any particular or specific policy or custom, or how it allowed the claimed constitutional violation to occur, identifying the policymaker or decisionmaker, or showing prior notice through a pattern of similar constitutional violations." Id.

Here, Plaintiff alleges no specific facts to show a policy or custom. Against Delaware County, Plaintiff only makes the conclusory allegation that the County violated his substantive right to travel, without alleging any specific facts. And Plaintiff's claims against both Delaware County and Darby Borough apparently are for vicarious liability as a result of the actions of Officer Uffleman. Therefore, they do not suffice. For these reasons, all claims against Delaware County and Darby Borough will be dismissed.

## C. All Claims Against Officer Uffleman Will Be Dismissed

Defendants argue that Plaintiff's claims, which apparently arise under the Fourth Amendment and are based on his arrest, are insufficient to survive a motion to dismiss. (Doc. Nos. 4, 9.)

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "It must always be remembered that what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." United States v. Ritter, 416 F.3d 256, 261 (3d Cir. 2005) (quoting Elkins v. United States, 364 U.S. 206, 222 (1960)).

In the seminal case Terry v. Ohio, 392 U.S. 1 (1968), the United States Supreme Court created an exception to the Fourth Amendment warrant requirement. Under the Terry exception, a police officer may conduct a brief investigatory stop when the officer has a reasonable suspicion based on articulable facts that a crime has been committed. Id. at 21-22. A Terry stop is a seizure under the Fourth Amendment.

Once it is determined whether a seizure occurred, the next inquiry is "whether that seizure was justified by reasonable, articulable facts known to the officer as of that time." United States v. Torres, 534 F.3d 207, 210 (3d Cir. 2008). In order to conduct a Terry stop consistent with the Fourth Amendment, a police officer "must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21.

> While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the

> Fourth Amendment requires at least a minimum level of objective justification for making the stop. The officer must be able to articulate more than an "inchoate and particularized suspicion or 'hunch'" of criminal activity.

Illinois v. Wardlow, 528 U.S 119, 123-24 (2000) (quoting Terry, 392 U.S. at 27).

Here, Officer Uffleman conducted a brief investigatory stop of Plaintiff when he approached Plaintiff on the steps outside Plaintiff's home. Officer Uffleman had more than a reasonable suspicion based on articulable facts that a crime had been committed because he witnessed first-hand Plaintiff violate the Pennsylvania Motor Vehicle Code by operating a bicycle at night without lights. (Doc. No. 4 at 9.) Officer Uffleman then needed to identify Plaintiff and Plaintiff cooperated by providing his name. (Id.) Officer Uffleman then found an open warrant for Plaintiff's arrest and arrested Plaintiff on the basis of that warrant. (Id. at 10.) Plaintiff does not contest the validity of the warrant and concedes he was arrested on the basis of the warrant. (Id.) For these reasons, Plaintiff fails to state a cause of action based on the stop and subsequent arrest.

Regarding Plaintiff's claims about Officer Uffleman not honoring Plaintiff's Moorish name, there is no constitutional right in this regard. There also is no right implicated by Officer Uffleman's conduct in listing Plaintiff as a race that was at odds with Plaintiff's desired race. Because Plaintiff fails to state any claim against Officer Uffleman, the claims against him will be dismissed.

**D. Plaintiff Fails to State a Conspiracy Claim as a Matter of Law**

Plaintiff alleges that Defendants conspired to violate Plaintiff's rights during events leading to this action. (Doc. Nos. 4, 9.) Defendants argue that any conspiracy claim fails as a matter of law because these Defendants legally cannot conspire among each other. (Doc. Nos. 14-15.)

"It is well established that § 1985(3) does not itself create any substantive rights, rather, it serves only as a vehicle for vindicating federal rights and privileges which have been defined elsewhere." Brown v. Phillip Morris Inc., 250 F.3d 789, 805 (3d Cir. 2001).

To state a viable conspiracy claim, a "plaintiff must show that two or more conspirators reached an agreement to deprive him [] of a constitutional right under color of law." Laurensau v. Romarowics, 528 F. App'x 136, 140 (3d Cir. 2013) (citation omitted). Such a conspiracy requires a meeting of the minds. Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008). A plaintiff must allege a factual basis to support agreement and concerted action—the elements of conspiracy. Capogrosso v. Super. Ct. of N.J., 588 F.3d 180, 185 (3d Cir. 2009). The complaint must include "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" Great W. Mining & Mineral Co. v. Fox Rothschild, LLP, 615 F.3d 159, 178 (3d Cir. 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

Plaintiff cannot succeed on a conspiracy claim because he cannot satisfy the required showing that there were "two or more conspirators" who acted to deprive him of a right. Laurensau, 528 F. App'x at 140. Officer Uffleman is the only employee named or referenced in this case. Regarding Darby Borough and Delaware County, a municipality cannot be held liable under § 1983 under a theory of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). And Plaintiff cannot claim that the Darby Borough Police Department conspired with its own officer. Lee v. SEPTA, 418 F. Supp. 2d 675, 681 (E.D. Pa. 2005) ("An employer and its officers and employees acting in the scope of their duties constitute one legal person for purposes of conspiracy law and therefore cannot conspire together."); Lackner v.

Glosser, 892 A.2d 21, 35 (Pa. Super. Ct. 2006) (explaining that "agents of a single entity cannot conspire among themselves").

If Plaintiff intends to suggest that Delaware County itself conspired with its employees, this argument fails. Such a conspiracy claim would be barred by the intracorporate conspiracy doctrine, which provides that "an entity cannot conspire with one who acts as its agent." Gen Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) And Pennsylvania's intracorporate conspiracy doctrine applies to federal civil rights conspiracy claims such as those now being raised by Plaintiff. Shingara v. Skiles, 274 F. App'x 164, 168 (3d Cir. 2008). For these reasons, any conspiracy claim must fail as a matter of law.

**E. Plaintiff's Claim for Punitive Damages Will Be Dismissed**

As a matter of law, punitive damages are not available against municipal entities. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Moreover, since Officer Uffleman is being dismissed as a Defendant, punitive damages will not lie against him either. For these reasons, punitive damages are not available.

**F. Futility to Amend**

The Court will not grant Plaintiff leave to amend because doing so would be futile. "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend . . . unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (emphasis in original). "[A] district court need not grant leave to amend a complaint if the complaint, as amended, would fail to state a claim upon which relief could be granted." Kundratic v. Thomas, 407 F. App'x 625, 630 (3d Cir. 2011) (quoting Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)).

Amendment will not cure the defects in the Amended Complaint.  Therefore, leave to amend would be futile.  Accordingly, it will not be granted.

## V. CONCLUSION

For these reasons, Defendants' Motions to Dismiss (Doc. Nos. 14-15) will be granted and the Complaint (Doc. Nos. 4, 9) will be dismissed.  An appropriate Order follows.